UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PROFESSIONAL REHABILITATION.
SERVICES, INC., et al.,

    Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

_____/

CASE No. 1:22-cv-1093

HON. ROBERT J. JONKER

ADVISACARE HOME HEALTHCARE
SOLUTIONS, INC., d/b/a/ ADVISACARE,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

_____/

CASE No. 1:23-cv-180

HON. ROBERT J. JONKER

## OPINION AND ORDER

### INTRODUCTION

    These are two cases with overlapping legal issues arising out of recent changes to Michigan's no-fault act (the "Act"). MICH. COMP. LAWS § 500.3101 *et seq*. The two cases are brought by medical or rehabilitation services providers who are treating individuals insured by defendant for injuries sustained in automobile accidents subject to the Act. Plaintiffs sue to obtain

payment for in-home healthcare services provided to Defendant's insureds at rates Plaintiffs say are reasonable and recoverable under the Act. Defendant claims that the recent changes to Section 3157 of the Act cap recoverable charges at rates far below those charged by Plaintiffs. Defendant further claims that some claims are time-barred under Section 3145(2).

The parties' positions on these two issues are contained in a total of four motions filed in these two cases. The motions have been fully briefed, and the Court heard argument on June 22, 2024. The Court concludes that Plaintiffs have met their Rule 56 burden of demonstrating that the Section 3157(2) cap of Medicare amounts payable for home-health-aide and skilled nursing care applies to their services, and the Court **GRANTS** Plaintiffs' motions to that extent. The Court further concludes that Defendant has demonstrated it is entitled to summary judgment in its favor with respect to the time-bar, and thus the Court **GRANTS** the defense motion to that extent.

## BACKGROUND

Plaintiffs in these cases are two Michigan corporations that provide rehabilitation and therapy services—such as physical, occupational, and speech therapies—to individuals who have suffered catastrophic injuries in automobile accidents. Plaintiffs brought these two actions to obtain payment for in-home healthcare services they provide to Defendant's insured. While the pleadings name a number of individuals and claims (some of which have since been dismissed based on the parties' stipulations) the briefing centers on one minor child, A.M., a covered insured of Defendant State Farm who was injured in a February 2021 car accident. As a result of her injuries, A.M. requires constant care. Both Plaintiffs have provided in home care and therapy to A.M.

Initially, A.M.'s care, and Defendant's payments towards that care, arose under Michigan's previous version of the Act. Under that previous version, Michigan's basic structure required

providers to charge "a reasonable amount" and no-fault insurers to pay "all reasonable charges." *See* MICH. COMP. LAWS §§ 500.3107(1)(a) and 3157 (2019). Under this framework, Plaintiff AdvisaCare charged $90 an hour for A.M's RN care and $75 an hour for A.M.'s LPN care. Defendant State Farm paid $72 an hour for A.M.'s RN care and $60 an hour for A.M's LPN care.

In July 2021, a marked transformation in Michigan's Act took effect based on legislation enacted in June 2019. Among other things, these changes included new fee schedules in MICH. COMP. LAWS § 500.3157. The parties generally agree that those schedules cap the amount that a provider is eligible to recover for healthcare treatment provided to an insured individual. The parties also generally agree the schedule establishes three levels for calculating the cap. The fee schedules start by providing a cap of 200% of Medicare amounts payable (but no more than the provider charged on January 1, 2019).[1] If no Medicare amount payable exists then, secondly, the schedule proceeds to provide a cap of 55% of a provider's charge description master ("CDM") in effect on January 1, 2019. And third, if the provider did not have a CDM as of January 1, 2019, then the schedule provides the cap is 55% of the average amount the provider charged for the service on January 1, 2019. Charges must still be "reasonable." MICH. COMP. LAWS § 500.3107.

When the new caps went into effect, Defendant began paying AdvisaCare approximately $42 an hour for A.M.'s in-home RN care and approximately $31 for A.M,'s in-home LPN care. These amounts were calculated at the third level discussed above, that is, 55% of the average amount the provider charged for the service in question on January 1, 2019. *See* MICH. COMP. LAWS § 500.3157(7). Defendant's payments reflected its determination of the amounts Plaintiffs

---

[1] This is for treatment rendered after July 1, 2021 and before July 2, 2022. The statute goes on to provide for 195% of the amount payable under Medicare for the period rendered after July 1, 2022, and before July 2, 2023, and 190% for the period thereafter. *See* MICH. COMP. LAWS § 500.1357(2)(a)-(c).

3

could recoup under that schedule.  This includes Defendant's determination that the Medicare and CDM caps are not applicable to the providers for the services provided, and Defendant's own calculation of the "average charge" in effect for Plaintiffs for the services provided.

Plaintiffs brought this action because they dispute these determinations.  They argue first that the applicable cap is either 200% of the Medicare amounts payable or 55% of the CDM, either of which produces a cap above Plaintiffs' actual charges.  AdvisaCare (Case No. 1:22-cv-1093 ECF No. 50) and Professional Rehabilitation Services d/b/a Rebound (Case No. 1:22-cv-1093 ECF No. 118) both seek partial summary judgment in their favor on the caps issue.  Defendant opposes both motions, and separately moves for partial summary judgment in its favor with respect to the time-bar on certain individual claims for which Plaintiffs seek payment.  (Case No. 1:22-cv-1093 ECF No. 69 and Case No. 1:23-cv-180 ECF No. 44).

## LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Material facts are facts which are defined by substantive law and are necessary to apply the law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  In deciding a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

4

When cross motions for summary judgment are filed, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391). "[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Cockrel v. Shelby Cnty. Sch. Dist.*, 280 F.3d 1036, 1056 (6th Cir. 2001) (quoting *Moore's Federal Practice*).

## DISCUSSION

1. ***There is an "amount payable" under Medicare for Plaintiffs' Services Such that the Section 3157(2) Cap Applies to these Cases.***

There are two motions filed by Plaintiffs in Case No. 1:22-cv-1093. In the first motion, Plaintiff AdvisaCare seeks reimbursement for in home care provided to A.M. In the second motion, Rebound seeks reimbursement for accident victims to whom it provides therapy. The issue in both motions is one of statutory interpretation: whether the limit on Plaintiffs' potential reimbursement for its services under the new fee schedules is 200% of the Medicare amount "payable to" the provider under (Section 3157(2)) or up to 55% of either the amount payable for the service under the provider's CDM or the average amount the provider charged for the service on January 1, 2019, if there was no CDM. (Section 3157(7)). Plaintiffs seeks a summary judgment ruling that there are Medicare amounts payable for their services and therapies such that Section 3157(2) applies, or alternatively, that they had a valid CDM for purposes of Section 3157(7). Defendant opposes the motion on the basis that Plaintiffs have been properly paid under the new fee schedule.

The foremost goal in statutory interpretation is to give effect to the lawmakers' intent. *See Sun Valley Foods Co. v. Ward*, 460 Mich. 230, 236 (1999); *see also Cent. Home Health Care Servs., Inc. v. Progressive Michigan Ins. Co.,* No. 364653, ___ N.W.3d ___, 2024 WL 1221462, at *2 (Mich. Ct. App. Mar. 21, 2024) (quoting *Woodman v. Dep't of Corrections*, 511 Mich. 427, 440 (2023)). To do this, a court turns to the language of the statute, *Briggs Tax Service, L.L.C. v. Detroit Public Schools*, 485 Mich. 69, 76 (2010) and "consider[s] both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Sun Valley*, 460 Mich. at 237 (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995) (internal quotation marks omitted)). "[T]he entire act must be read, and the interpretation to be given to a particular word in one section arrive at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole." *Pi-Con, Inc. v. A.J. Anderson Const. Co.*, 435 Mich. 375, 403-04 (1989) (quoting *Grand Rapids v. Crocker*, 219 Mich. 178, 182-83 (1922)). Michigan courts have typically found Michigan's Act to be "remedial in nature" and that it should be "liberally construed in favor of the persons intended to benefit from it." *Turner v. Auto Club Ins. Ass'n*, 448 Mich. 22, 28 (1995); *see also Gauntlett v. Auto-Owners Ins. Co.*, 242 Mich. App. 172, 179 (2000) (quoting *Gobler v. Auto-Owners Ins. Co.*, 428 Mich. 41, 61 (1987)). With respect to the recent amendments to that act, courts have also recognized the "Michigan Legislature enacted 'sweeping changes' to the no-fault act in 2019 in an attempt to control no-fault costs." *Cent. Home Health Care Servs., Inc.*, 2024 WL 1221462, at *2 (quoting *Andary v. USAA Cas. Ins. Co.*, 512 Mich. 207, 214, 218 (2023)).

The relevant sections of the new fee schedules to Michigan's no-fault act provide as follows:

> (1) Subject to subsections (2) to (14), a physician, hospital, clinic, or other person that lawfully renders treatment to an injured person for an accidental bodily injury

6

  covered by personal protection insurance, or a person that provides rehabilitative occupational training following the injury, may charge a reasonable amount for the treatment or training. The charge must not exceed the amount the person customarily charges for like treatment or training in cases that do not involve insurance.

(2)  Subject to subsections (3) to (14), a physician, hospital, clinic, or other person that renders treatment or rehabilitative occupational training to an injured person for an accidental bodily injury covered by personal protection insurance is not eligible for payment or reimbursement under this chapter for more than the following:

  (a)  For treatment or training rendered after July 1, 2021 and before July 2, 2022, 200% of the amount payable to the person for the treatment or training under Medicare.

  (b)  For treatment or training rendered after July 1, 2022 and before July 2, 2023, 195% of the amount payable to the person for the treatment or training under Medicare.

  (c)  For treatment or training rendered after July 1, 2023, 190% of the amount payable to the person for the treatment or training under Medicare.

***

(7)  If Medicare does not provide an amount payable for a treatment or rehabilitative occupational training under subsection (2), (3), (5), or (6), the physician, hospital, clinic, or other person that renders the treatment or training is not eligible for payment or reimbursement under this chapter of more than the following, as applicable:

  (a)  For a person to which subsection (2) applies, the applicable following percentage of the amount payable for the treatment or training under the person's charge description master in effect on January 1, 2019 or, if the person did not have a charge description master on that date, the applicable following percentage of the average amount the person charged for the treatment on January 1, 2019:

    *(i)*  For treatment or training rendered after July 1, 2021 and before July 2, 2022, 55%.

    *(ii)*  For treatment or training rendered after July 1, 2022 and before July 2, 2023, 54%.

    *(iii)*  For treatment or training rendered after July 1, 2023, 52.5%.

***

(8) For any change to an amount payable under Medicare as provided in subsection (2), (3), (5), or (6) that occurs after the effective date of the amendatory act that added this subsection, the change must be applied to the amount allowed for payment or reimbursement under that subsection. However, an amount allowed for payment or reimbursement under subsection (2), (3), (5), or (6) must not exceed the average amount charged by the physician, hospital, clinic, or other person for the treatment or training on January 1, 2019.

(9) An amount that is to be applied under subsection (7) or (8), that was in effect on January 1, 2019, including any prior adjustments to the amount made under this subsection, must be adjusted annually by the percentage change in the medical care component of the Consumer Price Index for the year preceding the adjustment.

\*\*\*

(15) As used in this section:

\*\*\*

(f) "Medicare" means fee for service payments under part A, B, or D of the federal Medicare program established under subchapter XVIII of the social security act, 42 USC 1395 to 1395*lll*, without regard to the limitations unrelated to the rates in the fee schedule such as limitation or supplemental payments related to utilization, readmissions, recaptures, bad debt adjustments, or sequestration.

MICH. COMP. LAWS § 500.3157.

The "simple question" for the Court to "answer in determining whether [Section] 500.3157(2) or [Section] 500.3157(7) applies is whether Medicare covers the service at issue." *Cent. Home Health Care Servs., Inc.*, 2024 WL 1221462, at \*5; *see also Cent. Home Health Care Servs., Inc. v. Home-Owners Ins. Co.,* No. 363777, 2024 WL 3216281, at \*3 (Mich. Ct. App. June 27, 2024). That is, whether there is an amount payable "under Medicare." The Court concludes here that Medicare does cover Plaintiffs' services. As Plaintiffs have shown, Medicare via the Centers for Medicare and Medicaid Services ("CMS") publishes amounts for home health aid care and skilled nursing care, as well as other therapies like occupational and physical therapies and thus provides fee for service payments as understood in Subsection 15(f). (*See, e.g.*, Case No.

8

1:22-cv-1093 ECF No. 51, PageID.226). It further recognizes codes for home-health-aides and skilled nursing care. (*Id.*). And the Michigan Department of Insurance and Financial Services ("DIFS") directs providers like Plaintiffs to the CMS schedules to determine payment. Plaintiffs have further demonstrated, moreover, that Medicare provides specific amounts payable that it uses in low utilization situations (or "LUPA" rates) and high-utilization situations (or "outlier payments"). (Case No. 1:22-cv-1093, ECF No. 65, PageID.870). In this, Medicare identifies a generic category of service and sets a fee schedule to be paid for the service category. This is enough, in the Court's mind, to trigger Section 3157(2). It is consistent with *Central Home Health Care*'s reading of subsection 15(f), and several state trial court decisions cited by Plaintiffs. (Case No. 1:22-cv-1093 ECF No. 51-8).

In arguing for a contrary conclusion, Defendant says Plaintiffs have the Medicare payment structure all wrong. Relying on its expert, Dr. Grabowski, Defendant argues Medicare provides a prospective payment system that is bundled into periodic payments; not based on a fee for service model. Whatever payment is made, it further says, is contingent on various criteria, inputs, and adjustments including things like LUPA and outlier payments as explained in its expert's report. In sum, Defendant contends that the prospective payment system is too ethereal to satisfy Section 3157(2), and that Plaintiffs are wrong that there is a Medicare amount payable for their services. Defendant argues that its position is consistent with DIFS rulings that have held that in-home healthcare services are not payable under Section 3157(2) where the insurer did not bill under the prospective payment system. To the Court, however, this all puts the cart before the horse and would require the hiring of Medicare experts to plow through a vast dataset filled with potential disputes over how to calculate a Medicare payable number, the only function of which is to serve as a cap for the reasonable charge. As state trial courts have determined, it is unlikely that the

Michigan legislature intended that expert testimony would be necessary to determine the application of rates to providers' claims. *See AdvisaCare Healthcare Solutions, Inc. v. Farm Bureau Mut. Insurance Co.*, No. 21-01054, slip op. at 9 (Mich. 17th Cir. Ct. Feb. 10, 2022). These decisions, furthermore, have determined that Medicare's prospective payment system satisfies Section 3157(2) and have disagreed with DIFS decisions that there are not amounts payable under Medicare for these services. *See Prescribed Therapy, LLC, v. Auto Club Group Ins. Co.*, No. 22-193691 (Mich. Oakland Cir. Ct. Oct. 7, 2022).[2]

Accordingly, the Court determines that Plaintiffs have met their summary judgment burden of demonstrating that Medicare provides an amount payable for the treatment they provide to the name insured in this case. Section 3157(2) is the applicable cap in this case. The remaining matter is what particular base rate applies, as well as Plaintiffs' request for an order under 28 U.S.C. § 2202 directing Defendant to reimburse Plaintiff at the previous rates charged. As both sides seem to recognize there are "caps within caps" with respect to reasonable rates and rates exceeding that charged in 2019 contained in Subsection 8. The Court determines that these issues and the relief requested by Plaintiffs are subject to factual proofs and potentially jury questions that will need to be resolved at trial. The Court does note, however, that the rates actually charged by Plaintiffs appear to be below the 200% Medicare cap, no matter what particular Medicare rate is selected. If so, that would mean the principal questions for the fact finder is simply whether Plaintiffs' rates are "reasonable" and otherwise lawful under Section 3157(1), and the possibility of a "cap within a cap" under Section 3157(8).

---

[2] Defendant points out that the Michigan Court of Appeals reversed the trial court's decision. But this was due to the Court of Appeals' decision that the insured was entitled to benefits under the previous version of the no-fault act based on the *Andary* decision, not because of any disagreement with the trial court's review of the no-fault act amendments. *See* Order, *Prescribed Therapy LLC v. Auto Club Group Ins. Co.*, No. 365267 (Mich. Ct. App. Aug. 30, 2023).

### 2. *Defendant is Entitled to Summary Judgment on Those Claims Outside the One Year Look Back*

Plaintiffs have brought these two cases seeking to recoup payment on behalf of several named insureds of Defendant. In both cases, Defendant seeks summary judgment in its favor on those claims in this case that it says are barred by the Act's one-year look back period. (Case No. 1:22-cv-1093 ECF No. 69; Case No. 1:23-cv-180 ECF No. 44). Plaintiffs oppose the motions on the basis that Defendant's Explanations of Review or "EORs" were insufficiently direct and forthright to start the one-year lookback period. Alternatively, Plaintiffs say, the Court should apply equitable tolling given the uncertainty that arose following the implementation of the amendments to the Act. The Court concludes that Defendant has the better argument here.

Both before and after the 2019 amendments, Michigan's Act provided that a plaintiff may not recover benefits for any portion of a claimed loss incurred more than one year before the date on which the action was commenced. *See* MICH. COMP. LAWS § 500.3145; *Joseph v. Auto Club Ins. Ass'n*, 491 Mich. 200 (2012). "Until 2005, Michigan courts interpreted the one-year-back rule to incorporate a judicially created tolling provision that remained in effect until a no-fault claim was formally denied by the insurer." *Encompass Healthcare, PLLC v. Citizens Ins. Co.*, 344 Mich. App. 248, 257 (2022). In 2005, the Michigan Supreme Court determined that the tolling provision enjoyed no support in the text of the Act as it existed at that time, and therefore determined that the one-year lookback was not subject to tolling. *Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 565 (2005). The 2019 amendments to the Act effectively incorporated the pre-2005 judicial tolling into the text of the Act. *See* MICH. COMP. LAWS § 500.3145(3); *Encompass Healthcare, PLLC*, 344 Mich. App. at 260 (noting the 2019 amendments reimposed a tolling exception to the one-year lookback rule). Under the Act's amendments "[a] period of limitations applicable under subsection (2) to the commencement of an action and the recovery of benefits is tolled from the

date of a specific claim for payment of the benefits until the date the insurer formally denies the claim[.]" MICH. COMP. LAWS § 500.3145(3). At issue in Defendant's motions is whether its EORs suffice to serve as formal denials under the statute.

"Michigan courts have provided specific guidance for what may qualify as a formal denial of claims in insurance disputes." *Encompass Healthcare, PLLC*, 344 Mich. App. at 260. While it need not be in writing, a communication must be "sufficiently direct" to constitute a formal denial. *Id.* at 261 (quoting *Mousa v. State Auto Ins Cos*, 185 Mich. App. 293, 295 (1990). In similar fashion, it must be "explicit and direct." *Id.* (quoting *McNeel v. Farm Bureau Gen. Ins. Co. of Mich.*, 289 Mich. App. 76, 86-87 (2010) (Kelly, J., dissenting)). In *Encompass Healthcare*, the Michigan Court of Appeals determined that the EORs in that case "did not provide the explicit and unequivocal expressions of finality required to constitute formal denials[.]" *Id.* The EORs, for one thing, did not include language "with the finality and clarity required to end the tolling period." *Id.* The EORs did little rather than state the amount of the claim that had been allowed versus that which had been reduced, with some containing additional comments that a professional review had been completed. Other EORs reviewed by the court in *Encompass Healthcare* contained requests for additional information, and while the insurer argued that the provider could have *assumed* a formal and final denial, the Michigan Court of Appeals disagreed this was enough: "A direct and forthright denial of coverage puts the claimant on notice that the clock is ticking. Relying on inferred denials invites disagreements and litigation, undermining one of the goals of the no-fault act." *Id.* at 262-263. Plaintiffs oppose Defendant's motions on the basis that Defendant's EORs cannot be distinguished from those the court in *Encompass Health* determined did not suffice to start the one-year lookback clock. They argue there is no langauge in the EORs stating that the unpaid portion of the bill was denied, and Plaintiffs point out that Defendant has

since added language to its EORs specifying that the EORs served as a formal denial. Plaintiffs say the natural inference from this is an implicit recognition from Defendant that its EORs did not contain sufficient explicit and direct language to constitute formal denials. Accordingly, Plaintiffs say, tolling remained in effect until they filed the two lawsuits in this Court.

The Court finds no genuine issue of material fact but that Defendant's EORs were sufficiently explicit and direct so as to constitute formal denials for purposes of Section 3145. Most notably, the EORs contained langauge explicitly referencing the one year lookback statute. This, combined with other language including that all reasonable amounts had been paid, was sufficient to communicate to the providers that this was the end of the line on the claim. There is more there than was in *Encompass Health*. To conclude otherwise, as Plaintiff's suggest, would elevate form over substance by requiring certain "magic word" phrasing to be contained in EORs. As Michigan courts have determined, however, "no authority holds that a formal denial must actually contain the term 'denied.'" *Maryland Cas. Co. v. Allstate Ins. Co.*, No. 261824, 2005 WL 1842748, at *2 (Mich. Ct. App. Aug. 4, 2005).

The Court further is not persuaded that equitable tolling applies. "[S]uch power has traditionally be reserved for 'unusual circumstances' such as fraud or mutual mistake." *See Devillers* 473 Mich. at 590. Plaintiff sees such circumstances here as arising from confusion over the fee schedules that were addressed in the subsequent *Andary* situation. But a court review of statutory language is hardly an unusual circumstance. The statute is by no means a paradigm example of clarity in legislative drafting, and it will ultimately be up to the state Supreme Court, which settled the earlier effective date controversy in *Andary*, to settle the disagreement over Sections 3157(2) and 3157(7) too. But the Court sees nothing here that would demonstrate this is one of those unusual cases where equitable tolling applies.

13

Having determined Defendant's EORs constitute formal denials, the Court need not determine which of the insureds remaining in this case fall outside the one-year lookback. The Court believes the matter is best addressed as one of proofs at the final pretrial conference.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that Plaintiffs' Motions for Summary Judgment (Case No. 1:22-cv-1093 ECF Nos. 50 and 118) are **GRANTED** to the extent specified in this Opinion and Order.

**IT IS FURTHER ORDERED** that Defendant's Motions for Summary Judgment (Case No. 1:22-cv-1093 ECF No. 69; Case No. 1:23-cv-180 ECF No. 44) are **GRANTED** to the extent specified in this Opinion and Order.

Dated:  September 26, 2024             /s/ Robert J. Jonker
                                                      ROBERT J. JONKER
                                                      UNITED STATES DISTRICT JUDGE